UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

HOPE TROTTER o/b/o
VDT, a minor,

      **Plaintiff,**                    **CIVIL ACTION NO. 09-cv-11619**

vs.

                                  **DISTRICT JUDGE BERNARD A. FRIEDMAN**

**COMMISSIONER OF**           **MAGISTRATE JUDGE MONA K. MAJZOUB**
**SOCIAL SECURITY,**

      **Defendant.**
_____/

## REPORT AND RECOMMENDATION

**RECOMMENDATION:** Defendant's Motion for Summary Judgment (docket no. 22) should be GRANTED and Plaintiff's Motion for Summary Judgment (docket no. 23) should be DENIED, as there was substantial evidence on the record to support the Administrative Law Judge's decision to deny Social Security Supplemental Security Income.

\*\*\*

**II.**    **PROCEDURAL BACKGROUND**:

Plaintiff is a minor child. His mother, Hope Trotter, filed an application for Supplemental Security Income (SSI) childhood disability benefits on his behalf with a protective filing date of September 2, 2005 alleging that he had been disabled since February 22, 2005 due to attention deficit hyperactivity disorder (ADHD), oppositional defiant disorder (ODD) and thyroid problems. (TR 45-47, 50, 54). The Social Security Administration denied benefits. (TR 41-44). A requested *de novo* hearing was held on March 19, 2008, before Administrative Law Judge (ALJ) James N.

1

Gramenos, who subsequently found that the Plaintiff was not entitled to disability benefits. (TR 11-26). Plaintiff and his mother, with Plaintiff's attorney present, testified at the hearing. (TR 257-58). In a decision dated January 8, 2009 the ALJ determined that Plaintiff was not entitled to childhood disability benefits because he did not have an impairment or combination of impairments that results in either "marked" limitations in two domains of functioning or "extreme limitations in one domain of functioning." (TR 23). The Appeals Council declined to review the ALJ's decision and Plaintiff commenced the instant action for judicial review (TR 2-4).

The parties have filed motions for summary judgment and the issue for review is whether Defendant's denial of childhood SSI was supported by substantial evidence on the record.

## III.   PLAINTIFF'S TESTIMONY AND MEDICAL AND RECORD EVIDENCE

### A.   Testimony and Reports

Plaintiff's mother testified at the hearing. Plaintiff was thirteen years old at the time of the hearing and lives with his mother, two older siblings and one younger sibling. (TR 261). According to Plaintiff's mother he is able to take care of his personal hygiene, including washing and dressing. (TR 262-63). Plaintiff's mother testified that Plaintiff takes his medication and at the time of the hearing was taking Adderall. (TR 264).

Plaintiff's mother testified that Plaintiff hits his younger brother every day and makes him cry. (TR 262). Plaintiff agreed with this scenario and said that he does it because he is bored and likes messing with his brother, so he slaps or punches him in the head or face. (TR 293-94). His mother testified that she gets calls each day from his teacher because he is destructive in class, bothers the other students and sometimes hits the girls. (TR 265). She testified that his grades are Ds and Fs. (TR 265). She testified that Plaintiff had been suspended approximately eleven times

that school year for about two to three days each time and had three in-school suspensions. (TR 266). She testified that Plaintiff has a friend named DJ but they fight. (TR 269).

Plaintiff's mother testified that Plaintiff kicks and hits the family dog and has played with fire and attempted to set a clothes basket on fire. She alleged that he does not get along with his grandmother and tried to charge at her with a knife and he talks back to adults and has gotten into physical fights with adults. (TR 268-69). Plaintiff does household chores such as washing the dishes or cleaning the kitchen or bathroom but has to be told several times to complete the task. (TR 270). Plaintiff's mother testified that he sees a psychiatrist once a month and a psychologist for therapy twice a month and she thought his therapy was going "fairly okay." (TR 270-71).

In a daily activities report from October 2005, Plaintiff's mother reported that he is able to complete chores and do his laundry "with assistance from adult supervision." (TR 67). She reported that he had three friends with whom he was able to play for thirty minutes before confusion or conflict occurred. She described him as very disrespectful with adults and that sometimes he is helpful with the other children in the family and sometimes he is "playful" or "picky" with them. (TR 67). She reported that he fights at least three times a day and needs redirection. (TR 67). She reported that he reads magazines and adventure books. (TR 70).

Plaintiff testified that he did not have any physical disabilities. (TR 273). He testified that he wants to be a rapper when he grows up. He writes song lyrics and he puts them over other rapper's beats or instrumentals, which he downloads from his friend DJ's computer. (TR 277-78). Plaintiff testified that he and DJ play football and basketball at the playground with other kids. (TR 286). Plaintiff testified that if he and DJ want to play at different activities they just separate. (TR 287). Plaintiff is able to run and handle a ball. (TR 286). He is able to shovel snow, mow the lawn

and put gasoline into the mower. (TR 302). Plaintiff testified that he is able to get along with the other students at the lunch table and in gym class. (TR 285). Plaintiff explained that he gets along with the other students and teacher in gym class because it is "fun." (TR 308).

Plaintiff testified that he got an F in English and he does not think the teacher likes him and he does not like her. (TR 289-90). He thinks he got a C- in math and a D or F in science and he thinks it is because he does not do his homework. (TR 290). Plaintiff explained that he is not doing well in school due to his behavior; when he misbehaves he gets suspended and missed his school work. (TR 305). Plaintiff testified that he slaps people in his class when he gets bored. (TR 299).

Plaintiff testified that his father has started coming back into his life and their relationship has improved. (TR 305). He sees his father a couple of times a week and they go for a ride and have a conversation. (TR 296). Plaintiff testified that he gets along with his mother and father. (TR 298). **B.     Medical and Record Evidence**

Plaintiff attended The Guidance Center for therapy and counseling off and on from February 22, 2005 through February 2008. (TR 73-101). On March 25, 2005 the psychiatrist concurred with the social worker's report that Plaintiff exhibits symptoms of ADHD and ODD and diagnosis of the same with a GAF of 45. (TR 96). The social worker reported that Plaintiff may be struggling with depression following the loss of his maternal grandfather and the lack of his biological father's presence in his life. (TR 95). A May 2005 psychiatric evaluation was consisted with the diagnosis of ODD and ADHD with a GAF of 56. (TR 90). In a June 2005 discharge summary, the treatment provider reported that Plaintiff had made no progress in treatment, but had not been consistently attending therapy, which may have contributed to the lack of progress. (TR 84).

Plaintiff was assessed again in September 2005 with complaints of negative, hostile and

4

defiant behavior and difficulty sustaining attention and concentration to complete homework and chores. (TR 77). Plaintiff was reportedly a "C" student who struggled with math and social studies. (TR 78). Plaintiff reported having a best friend. (TR 79). The treatment provider noted Plaintiff's mother's report that Plaintiff was "verbal" and "bright." (TR 80).

An October 4, 2005 Special Education Referral/Evaluation/Consent Form indicated that Plaintiff was having "difficulty mastering grade level curriculum" and he was recommended for a psychological educational assessment. (TR 59-60). In a November 30, 2005 note, school counselor Pat Deak reported that Plaintiff was excluded from school on October 28, 2005 for fighting and had a conference on October 4, 2005 following an "undesirable incident in class." The counselor reported that Plaintiff "appears to be doing much better since the medication was prescribed for him." (TR 61). Plaintiff's fifth grade report card shows final grades of six Cs, a D in math and a B in physical education. (TR 62). His first quarter sixth grade marks were three Cs and two Ds. (TR 63).

Plaintiff underwent an evaluation with Jai K. Prasad, M.D., on December 20, 2005. (TR 102-06). Dr. Prasad noted that Plaintiff's mother reported that he gets angry, fights with his siblings, has threatened his own life and picks on other children. (TR 102). The doctor reported that Plaintiff had a thyroid test which showed that his thyroid was stimulating hormones within normal levels but his T3 level was marginally elevated. (TR 103). Plaintiff was taking Concerta 27 mg. per day and his mother reported that his behavior was improved with Concerta. (TR 103). The doctor diagnosed ADHD. (TR 104).

Plaintiff underwent a psychological evaluation on February 14, 2006 with Hugh D. Bray, PhD. (TR 113-18). At that time, Plaintiff had completed the fifth grade and was in regular

5

education classes. (TR 114). He had never been hospitalized for psychological problems or put in jail. (TR 114). The psychologist described Plaintiff as friendly, cooperative and responsive but somewhat lethargic. He was attentive and changed tasks appropriately. (TR 114). Mental activity was described as organized but slow. (TR 114). His social skills were average for his age. (TR 114). Plaintiff's composite scores on the Wechsler Intelligence Scale for Children 4th Edition were as follows: verbal comprehension 89, perceptual reasoning 98, working memory 99, processing speed 78 and full scale 88. (TR 115). The full scale score of 88 was described as placing him "in the low average range of cognitive capability at the 21st percentile compared with his age group peers." (TR 115). Plaintiff was described as doing "age appropriate completion of" his chores in the home and performing age appropriate activities and hygiene. (TR 116). Plaintiff's social interactions were described as "good" since the medication. (TR 117). He gets along with family and friends. (TR 116). The psychologist diagnosed ADHA currently controlled with medication and ODD by report with low average intellectual skills and a GAF of 65. (TR 118).

Paul Liu, D.O., child psychiatrist, completed a Childhood Disability Evaluation Form dated March 1, 2006. Dr. Liu opined that Plaintiff had less than marked limitations in acquiring and using information, attending and completing tasks, interacting and relating with others, caring for himself and health and physical well-being. (TR 121-22). He has no limitation in moving about and manipulating objects. (TR 122). Dr. Liu noted that Plaintiff had been reported as an honor student at one point yet reports getting C and D grades. (TR 121).

Plaintiff continued to treat at The Guidance Center through March 10, 2008. He missed several appointments for medication review throughout 2006 and 2007. (TR 144, 146, 154, 156, 162-63, 168-69, 178-79, 180-81). In October 2006 the psychiatrist noted Plaintiff's mother's report

6

that Plaintiff was not taking his medication as he is supposed to and had lied about it. (TR 170). Plaintiff's mother reported that Plaintiff had been in detention and had hit his teacher. (TR 170). In December 2006 Plaintiff's mother reported that Plaintiff was doing well academically but had run out of medications. (TR 166). Plaintiff reported a side effect of GI discomfort with the medication Concerta. (TR 164-67).

In January 2007 the psychiatrist reported that Plaintiff was still having GI side effects with the medication but was better with a decrease in dosage. (TR 164). Plaintiff reported that his GPA was up to 2.8 out of 4.0. (TR 164). In March 2007 Plaintiff's therapist reported that Plaintiff had made "moderate progress in sustaining attention and concentration for consistently longer periods of time" but continued to have poor impulse control and poor social skills. (TR 209). In November 2007 Plaintiff's psychiatrist noted Plaintiff's mother's report that he was "doing really good" and had a "very good report card," was having no medication side effects and was eating and sleeping well, consistent with the October 2007 report regarding Plaintiff doing "good" and denying side effects. (TR 148-51). In February 2008 Plaintiff's therapist reported that Plaintiff had made "minimal progress in a marked reduction in the intensity and frequency of hostile and defiant behaviors toward adults." (TR 205-08).

The evidence also contains some earlier school records, including a September 2000 Plaintiff's hand written letter notifying Plaintiff's mother that Plaintiff had been "talking and playing around in the classroom while being very disruptive to the other students." (TR 249). In March 2001 Plaintiff received a pre-suspension notification for hitting another student. (TR 248). School records show that in May 2006 Plaintiff was attending school out of state and was getting Es in all classes. (TR 239-40). An Intervention Assistance Team Referral Form For Teachers noted that

7

Plaintiff had missed twenty percent of the days since enrollment and it was "difficult to provide consistency." (TR 240). The teacher noted that Plaintiff "tries to participate" but has "major weaknesses across the board" and exhibited disrespectful, belligerent, threatening and confrontational behavior. (TR 240). On May 9, 2006 he was assigned to an in-school alternative program for one day due to disruptive behavior in class. (TR 245). By June 2006 Plaintiff had earned four Es, a D, a C and an A. (TR 242).

Plaintiff was promoted from sixth to seventh grade having earned a final ELA (English) grade of a D+, a C in math, a C in drama and a C+ in physical education. (TR 244). The record also contains five discipline reports Plaintiff earned in the seventh grade for disruptive behavior in the classroom and during the breakfast program, being disrespectful and insubordinate and pinning another child up against the wall. (TR 251-55).

## IV.  ADMINISTRATIVE LAW JUDGE'S DETERMINATION

After finding that the claimant was a school-aged child on the date the application was filed and the date the decision was entered, who had never performed substantial gainful activity, the ALJ determined that he was impaired as a result of attention deficit hyperactivity disorder (ADHD) and opposition defiant disorder (ODD), severe impairments, but that these problems did not meet or medically equal any of those found in the Listing of Impairments. (TR 15). Moreover, the ALJ found that the claimant's impairments did not "functionally equal" the Listing because he did not have an impairment or combination of impairments that resulted in marked and severe functional limitations. The ALJ concluded that Plaintiff was not disabled under the Social Security Act since the September 2, 2005 filing date.

## V. LAW AND ANALYSIS

### A. Standard Of Review

Pursuant to 42 U.S.C. § 405(g), this Court has jurisdiction to review the Commissioner's final decisions. Judicial review of the Commissioner's decisions is limited to determining whether his findings are supported by substantial evidence and whether he employed the proper legal standards. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Walters v. Commissioner*, 127 F.3d 525, 528 (6th Cir. 1997). Substantial evidence is more than a scintilla but less than a preponderance; it is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson*, 402 U.S. at 401 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197 (1938)); *Walters*, 127 F.3d at 528. It is not the function of this court to try cases *de novo*, or resolve conflicts in the evidence, or decide questions of credibility. *See Brainard v. Sec'y of Health and Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

In determining the existence of substantial evidence, the court must examine the administrative record as a whole. *See Kirk v. Sec'y of Health and Human Servs.*, 667 F.2d 524, 536 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, even if the reviewing court would decide the matter differently, *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports the opposite conclusion. *See Her v. Commissioner*, 203 F.3d 388, 389-90 (6th Cir. 1999); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc) (noting that the substantial evidence standard "presupposes that there is a zone of choice within which decision makers can go either way, without interference from the courts").

**B.  Analysis**

*1.  Eligibility For SSI Childhood Disability Benefits*

A child will be considered disabled if he has a "medically determinable physical or mental impairment, which results in marked and severe functional limitations."  42 U.S.C. § 1382c(a)(3)(C)(i).  To determine whether a child's impairments result in marked and severe limitations, Social Security Administration (SSA) regulations prescribe a three step sequential evaluation process:

> 1.  A child will be found "not disabled" if he engages in substantial gainful activity.
>
> 2.  A child will be found "not disabled" if he does not have a severe impairment or combination of impairments.
>
> 3.  A child will be found "disabled" if he has an impairment or combination of impairments that meets, medically equals, or functionally equals an impairment listed in 20 C.F.R. Part 404, Subpart P, App. 1. 20 C.F.R. § 416.924(a)-(d) (2010).

To determine whether a child's impairment(s) functionally equals the listings, the SSA will assess the functional limitations caused by the child's impairment(s).  20 C.F.R. § 416.926a(a)(2010).  The SSA will consider how a child functions in six domains:

> 1.  Acquiring and using information;
>
> 2.  Attending and completing tasks;
>
> 3.  Interacting and relating with others;
>
> 4.  Moving about and manipulating objects;
>
> 5.  Caring for yourself; and
>
> 6.  Heath and physical-being.  20 C.F.R. § 416.926a(b)(1).

If a child's impairments result in "marked" limitations in two domains, or an "extreme" limitation in one domain,[1] the impairment functionally equals the listing and the child will be found disabled. 20 C.F.R. § 416.926a(d).

2. *Whether Substantial Evidence Supports the ALJ's Findings With Respect To The Medical Record*

Plaintiff's mother argues in the Motion for Summary Judgment (docket no. 23) that Plaintiff has been diagnosed with ODD and ADHD. She states that he undergoes treatment and takes medication for his conditions. She argues that he has behavior issues including anger issues, social issue and trouble focusing on tasks[2]. (Docket no. 23). Plaintiff's mother does not raise any issues related to physical conditions or impairments. The issues raised by Plaintiff's mother are concentrated in the functional domain of attending and completing tasks and interacting and relating with others. 20 C.F.R. § 416.926a.

Generally, any issues not specifically presented to the Court would be waived. *See, e.g., McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997). However, the Court is charged with the duty to determine whether an ALJ's findings are supported by substantial evidence and whether that ALJ employed the proper legal standards. *Walters*, 127 F.3d at 528. Part of that duty, at least in this case, is to determine if substantial evidence supports the ALJ's determinations.

---

[1] A marked limitation is one that "interferes seriously with [a child's] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(2). An extreme limitation is one that "interferes very seriously with [a child's] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(3).

[2] The Court does not find support in the record for her allegation in the Summary Judgment Motion that Plaintiff was "placed in the juvenile detention center for his outrageous behavior" or that he has run away from home. (Docket no. 23).

Plaintiff's assertion is analogous to alleging that he suffers from ODD and ADHD, a severe condition at step two and a condition resulting in a marked limitation in Plaintiff's ability in one or more of the six areas of functioning, by itself or in combination with Plaintiff's other impairments. Because Plaintiff has raised the issue of his diagnoses of ADHD and ODD and his functional limitations related to anger and hostility issues, social issues, behavior that has lead toward school suspensions, impulsiveness, hyperactivity, an alleged lack of progress in therapy and an inability to focus on assigned tasks, the Court will consider steps two and three of the ALJ's decision. The Court is mindful that it is required to construe Plaintiff's pro se pleadings liberally, and hold them to "less stringent standards than formal pleadings drafted by lawyers." *See Haines v. Kerner*, 404 U.S. 519, 520 (1972).

At step two, the ALJ found that Plaintiff suffers from a ADHD and ODD. (TR 15). This is consistent with the impairments which are identified in Plaintiff's motion for summary judgment. The ALJ properly pointed out the diagnoses in the record. "Medical evidence of ... impairment(s) must describe symptoms, signs, and laboratory findings." 20 C.F.R. § 416.924a(a)(1).

The ALJ pointed out that Plaintiff has received treatment at The Guidance Center where he was diagnosed in 2005 with ADHD and ODD. (TR 17, 96). Consistent with Plaintiff's motion for summary judgment, which does not raise issues related to physical impairments, the ALJ had found that Plaintiff does not have any severe physical medical impairments. (TR 18). Plaintiff underwent a normal consultative physical examination on December 20, 2005, in which Dr. Prasad diagnose only ADHD. (104). Plaintiff testified that he does not have any physical disabilities. (TR 273). His mother testified that he is able to perform his personal care tasks, such as dressing himself. (TR 262-63). He also performs household chores with reminders. (TR 270). The ALJ's findings at step

12

two are supported by substantial evidence. There is simply no objective medical evidence in the record to support the finding of impairments other than ADHD and ODD.

3.  *Whether The ALJ's Decision Regarding Plaintiff's Functional Limitations Is Supported By Substantial Evidence*

The ALJ properly found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals an impairment in the Listings. 20 C.F.R. § 416.924(d). There is no opinion of record which would indicate that Plaintiff meets or medically equals a listing level impairment. Although the ALJ found that Plaintiff has severe mental impairments, there is substantial evidence in the record to support the ALJ's finding that the Plaintiff did not have a disability meeting or medically equal to the Listing.

The ALJ analyzed whether Plaintiff's impairment or combination of impairments functionally equals the Listings. An impairment is of listing-level severity if Plaintiff has a "marked" limitation in two of the six functional domains or an "extreme" limitation in one domain. 20 C.F.R. § 416.926a(d). The ALJ concluded that Plaintiff had less than marked limitations in all domains except moving about and manipulating objects, in which he concluded that Plaintiff has no limitations. (TR 18-25).

The ALJ found that Plaintiff had less than marked limitations in acquiring and using information (functional domain no. 1), which is described as how well Plaintiff acquires or learns information and how well he uses the information he has learned. (TR 20-21). The ALJ correctly pointed out that on multiple occasions Plaintiff's mother described him as "verbal" and/or "bright" and had described him as a "C" student who struggles with math and social studies. (TR 19, 78, 80). Plaintiff was able to answer questions at the hearing, including explaining that he writes rap lyrics. (TR 277-78).

13

The ALJ pointed out that in intelligence testing, Plaintiff's IQ revealed low average cognitive ability. (TR 19, 114-15). He "displayed weak concentration and attention span," but was able to perform serial 7s and calculations and his fund of knowledge included the current president and the ability to name five large cities. (TR 117). Plaintiff was in regular education classes and had not repeated a grade. (TR 114). His reading ability was at a fifth grade equivalent level upon completion of the fifth grade. (TR 114-15). The ALJ pointed out that Plaintiff earns grades of Cs and Ds and considered and cited Plaintiff's mother's report that Plaintiff does not always perform his homework and often does not bring it home at all. (TR 19). The ALJ's finding that Plaintiff has less than marked limitations in this domain is consistent with the description of this domain in the regulations and is supported by substantial evidence.

The ALJ found that Plaintiff had less than marked limitations in his ability to attend to and complete tasks (functional domain no. 2), which is described as how well Plaintiff is able to focus and maintain attention, carry through and finish activities and includes the pace at which he performs and the ease with which he changes activities. (TR 19-20). 20 C.F.R. § 416.926a(h). Examples of limitations in this domain are given as being "easily startled, distracted, or over reactive to sounds, sights, movements, or touch," "slow to focus on, or fail to complete activities of interest" for example, games or art projects, "repeatedly become sidetracked from your activities or you frequently interrupt others," "easily frustrated and give up on tasks, including ones you are capable of completing," and "require extra supervision to keep you engaged in an activity." 20 C.F.R. § 416.926a(h)(3)(i)-(v). This is one of the domains in which Plaintiff's mother challenges the ALJ's findings, arguing that Plaintiff has "problems focusing on a specific task" and has issues with his "ability to focus on assigned task." (Docket no. 23).

The ALJ correctly noted that in 2007 The Guidance Center therapist reported that Plaintiff had made moderate progress in sustaining attention and concentration. (TR 20, 209). The ALJ also noted that Plaintiff is active in sports activities, including team games such as basketball and football. (TR 20, 286). The ALJ pointed out that Plaintiff is able to engage in chores at home, despite needing some supervision or reminders. (TR 270, 302). Dr. Bray opined that Plaintiff's completion of chores was appropriate for his age. (TR 116). Plaintiff's mother reported that Plaintiff reads magazines and adventure books. (TR 70). 20 C.F.R. § 416.926a(h)(2)(iv), (v). Though there is evidence that Plaintiff does not complete all homework and often does not bring it home, the ALJ considered this and has concluded that Plaintiff is not without limitations in the area of attending and completing tasks. (TR 19-20). The ALJ's finding in this domain is supported by substantial evidence.

The ALJ found that Plaintiff had less than marked limitations in interacting and relating with others (functional domain no. 3), which is described as how well Plaintiff initiates and sustains emotional connections with others, develops and uses the language of his community, cooperates with others, complies with rules, responds to criticism and respects and takes care of the possessions of others. (TR 20-21). The ALJ pointed out that reports in 2005 indicate that Plaintiff had limited contact with his biological father. (TR 21, 95). The ALJ noted testimony that Plaintiff gets along with his father. (TR 16, 297). Plaintiff testified that he now sees his father about twice a week for rides in the car, conversation and to play basketball and their relationship has improved. (TR 296, 298, 305). The ALJ pointed out Plaintiff's relationship with his grandmother; Plaintiff reported that his grandmother takes care of him and that his mother loves him. (TR 22, 94). The ALJ also noted the social worker's report that Plaintiff's depression may be due to the loss of his maternal

15

grandfather. (TR 22, 95). Dr. Bray noted that Plaintiff's social interactions were "good" with medication. (TR 116).

The ALJ noted that Plaintiff has a best friend with whom he spends time and he engages in games with other "friends," including playing basketball and football. (TR 20, 22, 286). The ALJ's findings are examples of Plaintiff having made emotional connections. The ALJ also cited Plaintiff's mother's report that Plaintiff was not doing well in school due to behavior problems but that Plaintiff testified that he gets along with his gym teacher and students in his gym class. (TR 17, 308). The ALJ considered Plaintiff's mother's report that he misbehaves with his younger brother and other children at school. (TR 16, 262, 265). The ALJ has properly considered the evidence of record, including Plaintiff's mother's report of Plaintiff's interactions with others, his hostility, and anger and social issues. Substantial evidence supports the ALJ's finding that Plaintiff has some limitations, but less than marked limitations, in the domain of interacting and relating with others.

The ALJ found that Plaintiff has no limitations in moving about and manipulating objects (functional domain no. 4), which is described as how Plaintiff moves his body from one place to another, how he moves and manipulates items, and it includes both gross and fine motor skills. (TR 23-24). 20 C.F.R. § 416.926a(j). As set forth above, there is no evidence that Plaintiff has any limitations in this domain or any severe physical impairments. The ALJ correctly pointed out that Plaintiff has "no physical problems," he plays basketball, tackle football and enjoys gym class at school, all of which is supported by the record and Plaintiff's testimony. (TR 23). The ALJ also pointed out Plaintiff's testimony that he mows the lawn and shovels snow. (TR 302). Plaintiff dresses and engages in personal care tasks independently with no evidence of problems with manipulation. (TR 16). The ALJ pointed out that Plaintiff uses musical equipment. (TR 16, 277-

79). Plaintiff testified that he uses his friend's computer. (TR 278). There is simply no evidence in the record of physical problems or limitation in fine or gross manipulation and the ALJ's finding in this domain is supported by substantial evidence.

The ALJ found that Plaintiff has less than marked limitations in his ability to care for himself (functional domain no. 5), which is described as how well Plaintiff maintains a healthy emotional and physical state, including how well he gets his physical and emotional wants and needs met in appropriate ways, how he copes with stress and changes in his environment and whether he takes care of his own health, possessions and living area. (TR 23). 20 C.F.R. § 416.926a(k). "Caring for yourself includes using your independence and competence to meet your physical needs, such as feeding, dressing, toileting, and bathing, appropriately for your age." 20 C.F.R. 416.926a(k)(1)(ii).

The ALJ pointed out that Plaintiff's activities and hygiene were described by Dr. Bray as "age appropriate" and that plaintiff is "independent" with hygiene. (TR 24, 116). The ALJ pointed out that Plaintiff's mother testified that Plaintiff dresses himself and eats breakfast. (TR 262-63). Plaintiff testified that he eats lunch with his class. (TR 285). He performs chores around the house. (TR 24). The ALJ considered Plaintiff's mother's report that he needs reminders to finish his chores. (TR 16, 270).

Caring for himself effectively also includes employing effective coping strategies, appropriate to his age, to identify and recognize thoughts, urges and intentions and recognizing when he is ill, "following recommended treatment, taking medication as prescribed, following safety rules, responding to [his] circumstances in safe and appropriate ways, making decisions that do not endanger [him]self, and knowing when to ask for help from others." 20 C.F.R. § 416.926a(k)(1)(iii), (iv). The ALJ considered Plaintiff's mother's report and reports of record that Plaintiff has

"experienced several suspensions from the school classes," does not bring his homework home and does not complete homework. (TR 16). The ALJ pointed out Plaintiff's mother's testimony that Plaintiff sees a psychiatrist and a counselor. (TR 16). Plaintiff's mother reported Plaintiff's therapy was going "fairly okay." (TR 270-71). The record shows two instances of Plaintiff's non-compliance with his medication, but he was otherwise noted as compliant with his medication and therapy and reports from school and his therapist and psychiatrist were that he was doing well and/or was improved with the medications. (TR 61, 117, 148-51, 170, 172, 177). The ALJ noted evidence in the record that Plaintiff had dealt with several relocations of residence including out of state and changing schools. (TR 17, 239-40). The ALJ's finding that Plaintiff has less than marked limitations in the domain of caring for himself is supported by substantial evidence.

Finally, the ALJ found that Plaintiff had less than marked limitations in the area of health and physical well-being (functional domain no. 6), which is described as consideration of the cumulative physical effects of physical or mental impairments and their associated treatments or therapies on functioning that were not considered in paragraph (j) (moving about and manipulating objects). (TR 24-25). This is consistent with the record as discussed above. The ALJ pointed out that Plaintiff's mother reported that he sometimes forgets to take his medication but also reported him as compliant with medications on more than one occasion. (TR 25, 148-51). Plaintiff's appetite and sleep were reported as "well" and "fine." (TR 25, 148-51). There is evidence that Plaintiff had gastrointestinal side effects from one of his medications, but the doctor decreased the dosage to relieve the side effects. (TR 164-67). Reports show that Plaintiff has had improvement in concentration and social interactions with his medication. (TR 61, 103, 117). The ALJ's findings in this domain are supported by substantial evidence.

The ALJ's findings that Plaintiff had less than marked or no limitations in each of the functional areas is supported by substantial evidence. It is worth noting that the ALJ's findings are also consistent with the agency consultants' evaluation and is not inconsistent with other opinions of record. (TR 105, 121-22).

## VI. CONCLUSION

The ALJ's decision to deny SSI is based on substantial evidence in the record. Accordingly, Plaintiff's Motion for Summary Judgment (docket no. 23) should be denied, that of Defendant (docket no. 22) granted, and the instant Complaint dismissed.

## REVIEW OF REPORT AND RECOMMENDATION

Either party to this action may object to and seek review of this Report and Recommendation, but must act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Rule 72.1(d)(2) of the *Local Rules of the United States District Court for the Eastern District of Michigan*, a copy of any objection must be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length

unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

Dated: August 25, 2010    s/ Mona K. Majzoub
MONA K. MAJZOUB
UNITED STATES MAGISTRATE JUDGE

**PROOF OF SERVICE**

      I hereby certify that a copy of this Report and Recommendation was served upon Hope Trotter and Counsel of Record on this date.

Dated: August 25, 2010    s/ Lisa C. Bartlett
Case Manager